UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARIAS VALENZUELA EDWARD
MANFREDO (A# 216-102-056),

Petitioner,

v.

WARDEN,

Respondent.

No.  1:26-cv-01249 DJC SCR

ORDER AND
FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee representing himself in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).  Because petitioner has paid the required filing fee, his motion to proceed in forma pauperis is denied as moot.  ECF No. 2.

I.      Factual and Procedural History

Petitioner is a Guatemalan national who has been in immigration detention since March 4, 2025.  He has spent the last six months in the California City ICE Detention Center, within this judicial district.  ECF No. 1 at 6.  Petitioner states he has asked for a bond hearing twice, but the immigration judge ("IJ") told him he is not eligible because he can escape to his country.  Id. Petitioner complains of harsh conditions and mistreatment in the facility, including time in solitary confinement, and of poor medical care for his knee condition and diabetes.  Id. at 6-7.

Petitioner had resided in the United States for a total of 34 years prior to his detention and

1

is married with six children who are U.S. citizens.  ECF No. 1 at 9.  Petitioner has operated a business installing hardwood floors since 2003 that is in a "downfall" since his arrest and absence.  Id.  Petitioner acknowledges past criminal convictions, including most recently a 2017 conviction for false imprisonment for which he served six months in prison but states he has performed community service and successfully completed probation.  Id. at 7; ECF No. 15 at 11.  Petitioner alleges his prolonged detention violates the Due Process Clause of the Fifth Amendment and seeks his immediate release or, in the alternative, a bond hearing in which the government bears the burden of proof by clear and convincing evidence.  ECF No. 1 at 10, 19-20.

The undersigned ordered respondent to respond to the petition and "include with the answer/return any and all transcripts or other documents relevant to the determination of the issues presented in the application."  ECF No. 9.  Respondent, however, did not submit any evidence.  Instead, respondent submitted a short return asserting that petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6).  ECF No. 10.  Respondent concedes that petitioner's removal "is not currently scheduled," but argues petitioner has not shown a significant likelihood of removal in the reasonably foreseeable future.  Id.

The undersigned then ordered respondent to "file a supplemental brief that explains the basis for Respondent's position that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6)," and to submit "any and all documentation necessary to support that position, including, at a minimum, Petitioner's order of removal and most recent Form I-213."  ECF No. 12.  In response, respondent filed a short supplemental answer/return withdrawing their prior answer/return.  ECF No. 15.  Respondent clarifies that petitioner is a "visa overstay" who is currently in removal proceedings and does not yet have a final removal order.  ECF No. 15 at 1.  Respondent further argues that petitioner has prior convictions for crimes of moral turpitude and is subject to detention under 8 U.S.C. 1226(c)(1)(A).  Id.

Attached to the supplemental answer were documents from petitioner's immigration file showing he was admitted to the U.S. on April 30, 1997, and authorized to remain through October 29, 1997. ECF No. 15 at 4.  On March 4, 2025, immigration officials charged him as a visa overstay removable under INA § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)].  Id.  The records

2

also show that petitioner has received two custody redetermination hearings pursuant to INA § 1236 [8 U.S.C. § 1226]. At the first hearing on April 22, 2025, the IJ denied bond and wrote in full that petitioner "has not met his burden to show that he is not a danger or a flight risk." Id. at 14-15. At the second hearing on September 29, 2025, the IJ again denied bond based on danger but referred to his oral decision in lieu of a written finding. Id. at 17-18. Respondent's production did not include the oral decision or any related evidence from either bond hearing.

## II.   Legal Standard

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

## III.   Analysis

### A. Applicable Detention Statute

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is

3

mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Respondent argues petitioner has committed crimes of moral turpitude and is thus subject to mandatory detention under 8 U.S.C. § 1226(c). ECF No. 15. Petitioner does not identify the applicable detention statute but filed the petition on a form challenging prolonged detention under the mandatory detention statutes 8 U.S.C. §§ 1225(b) or 1226(c). See ECF No. 1 at 6, ¶ 21.

Section 1226 "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal." Rodriguez Diaz, 53 F.4th at 1196. Section 1226(a) establishes the "default rule" and "authorizes the Attorney General, in his discretion, to arrest and detain aliens 'pending a decision on whether the alien is to be removed from the United States.'" Id. (quoting 8 U.S.C. § 1226(a)). "The Attorney General can either 'continue to detain the arrested alien,' or "may release the alien on (A) bond of at least $1,500 . . . or (B) conditional parole." Id. (quoting 8 U.S.C. § 1226(a)(1)-(2)).

Section 1226(c), on the other hand, "carves out a class of [noncitizens] for whom detention is mandatory." Rodriguez Diaz, 53 F.4th at 1197. Under § 1226(c), "'[t]he Attorney General shall take into custody any alien who' is removable from this country because he has been convicted of one of a specified set of crimes." Demore v. Kim, 538 U.S. 510, 513, (2003) (quoting 8 U.S.C. § 1226(c)(1)). The specific offenses are set out in § 1226(c)(1)(A)-(E):

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [1] to a term of imprisonment of at least 1 year,

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or

(E)
(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and

(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential

4

elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(A)-(E).

Here, there is no evidence that petitioner was deemed inadmissible based on a "crime involving moral turpitude" as respondent argues. See 8 U.S.C. §§ 1226(c)(1)(A), 1182(a)(2). The record is clear that respondent detained petitioner as a visa overstay under § 1227(a)(1)(B), which is not one of the enumerated statutory provisions referenced in § 1226(c)(1)(A)-(E) as set out above. Moreover, respondent does explain how petitioner received two bond hearings under § 1226 when subsection (c) "on its face offers no opportunity for release on bond." Rodriguez Diaz, 53 F.4th at 1197. Accordingly, the undersigned finds petitioner is not detained under § 1226(c) and instead is subject to the default detention provision at § 1226(a).

### B. Due Process Analysis

The undersigned next turns to whether due process requires respondent to provide petitioner with an additional bond hearing in which the government bears the burden of proof by clear and convincing evidence.[1] Petitioner's now thirteen-month detention is unquestionably prolonged. See Zadvydas, 533 U.S. at 701 (recognizing six months as a presumptively constitutional removal period). While Ninth Circuit precedent forecloses an *inherent* due process right to a successive bond hearing by virtue of petitioner's continued, prolonged detention, Rodriguez Diaz, 53 F.4th at 1209-10, the undersigned does not read Rodriguez Diaz or other precedent as foreclosing individualized analysis as to whether such a successive bond hearing is necessary to satisfy due process. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (Rodriguez Diaz "held only that a noncitizen detained under section 1226(a) does not have

---

[1] Given petitioner has already received two bond hearings, the undersigned finds no support for petitioner's alternative request for immediate release. Cf. Feng v. Lyons, No. 1:26-cv-0235 DJC SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) (ordering release of noncitizen detained under 8 U.S.C. § 1226(a) for five months without a bond hearing, noting that the "[p]rovision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right").

5

a right to a *second* bond hearing when the only changed material condition since their first bond hearing is the duration of their detention.") (emphasis in original).  But given the factual and legal similarities between this case and Rodriguez Diaz, which involved a noncitizen's procedural due process challenge to a fourteen-month detention under § 1226(a), the undersigned will use the Ninth Circuit's Mathews analysis there as a guide.  Accordingly, the undersigned will proceed to the Mathews analysis.

Private Interest:  Petitioner's "'freedom from prolonged detention' is 'unquestionably substantial.'"  Rodriguez Diaz, 53 F.4th at 1207 (quoting Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011)).  Petitioner's private interest is further strengthened by his family ties and the undisputed facts that he has operated his own business for decades and paid taxes.  See Morrissey, 408 U.S. at 482 (explaining that private interests include the freedom to "be gainfully employed and . . . to be with family and friends and to form the . . . enduring attachments of normal life").  Petitioner also bolsters his private interest by thoroughly detailing how detention interrupted the continuity of care for his knee pain and diabetes.  See Doe v. Chestnut, --- F.Supp.3d ----, No. 1:24-cv-0943 EPG HC, 2025 WL 3240400, *20-*22 (E.D. Cal. Nov. 20, 2025) ("[t]he evidence now before the Court at least suggests several important ways in which the conditions at [California City] are not only inherently harsh but also worse than the conditions [...] in state prison.") (citing Doe v. Becerra, 732 F. Supp. 3d 1071, 1089 (N.D. Cal. 2024)).

However, in Rodriguez Diaz, the Ninth Circuit warned "not to overstate the strength" of the showing under the first Mathews factor where a noncitizen, as is the case here, has accessed § 1226(a)'s procedural protections during the course of the prolonged detention.  Rodriguez Diaz, 53 F.4th at 1207.  "[I]n evaluating Rodriguez Diaz's interests under the first prong of the Mathews analysis, we cannot simply count his months of detention and leave it at that. We must also consider the process he received during this time [and] the further process that was available to him . . .."[2]  Id. at 1208.  Thus, petitioner's two redetermination hearings in April and September

---

[2]  The Ninth Circuit also considered "the fact that [petitioner's] detention was prolonged due to his decision to challenge his removal order."  Rodriguez Diaz, 53 F.4th at 1208.  There is no evidence in the record here that petitioner prolonged his own immigration proceedings, and petitioner faults the government for multiple delays.  ECF No. 1 at 9.

6

2025, respectively, and his ability to request a subsequent bond redetermination upon a showing of changed circumstances, 8 C.F.R. § 1003.19(e), significantly diminish his substantial private interest.  Still, on balance, the undersigned finds that the first factor slightly tilts toward petitioner.

Erroneous Deprivation: The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  Mathews, 424 U.S. at 335.

In Rodriguez Diaz, the Ninth Circuit held that "existing agency procedures sufficiently protected [petitioner's] liberty interest and mitigated the risk of erroneous deprivation" where the petitioner received a bond hearing two months into his fourteen-month detention and an IJ denied petitioner's subsequent request for custody redetermination based on changed circumstances.  53 F.4th at 1209.  Given this case's factual and legal similarities to Rodriguez Diaz, the undersigned must conclude the risk of erroneous deprivation here to be low.  See id. at 1210 (concluding the risk of erroneous deprivation was "relatively small" where "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [petitioner] the opportunity to be heard by a neutral decisionmaker") (citation omitted).  In fact, petitioner has arguably received more process than the petitioner in Rodriguez Diaz, as IJs here convened not one but two separate bond hearings to determine whether petitioner posed a risk of danger or flight.  Petitioner only briefly mentions his bond hearings in the petition and has not identified any procedural irregularities during the proceedings or demonstrated that any additional procedural safeguards are necessary.  For these reasons, the second factor favors respondent.

Government Interest: Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'"  Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515).  However, "[p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal.  After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community."  Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020).  Further, "[t]he effort and cost to provide Petitioner with [a bond hearing] is minimal[.]"  Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  Accordingly, the

7

final factor favors petitioner.

Having conducted the Mathews analysis, the undersigned concludes that the low risk of erroneous deprivation ultimately defeats petitioner's due process claim despite his private interest in freedom from prolonged detention and the government's comparatively weak interest in continuing to detain him without a successive bond hearing,  There are simply no facts in the record from which to distinguish this case from the binding precedent Rodriguez Diaz, particularly given petitioner has received not one but two custody hearings during his thirteen-month-long detention.  Accordingly, the undersigned recommends that the petition be denied.

Finally, the undersigned notes that the petition does not challenge the legal sufficiency of petitioner's two bond hearings.  In fact, there is no evidence in the record regarding these hearings, such as transcripts or information regarding whether petitioner even appealed to the BIA, other than the IJ's respective one-sentence decisions.  Petitioner is advised that these findings and recommendations do not preclude his ability to bring another § 2241 petition challenging any errors of law in these two custody redetermination proceedings.  See Martinez v. Clark, 124 F.4th 775 (9th Cir. 2024) (setting out standards for challenging legal error in custody redetermination proceedings through habeas).

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that petitioner's (A# 216-102-056) motion to proceed in forma pauperis (ECF No. 2) is DENIED as moot.

In addition, IT IS HEREBY RECOMMENDED that:

1.      Petitioner's application for a writ of habeas corpus (ECF No. 1) be DENIED;

2.      Petitioner's motion to appoint counsel (ECF No. 3) be DENIED as moot; and

3.      The Clerk of the Court be directed to enter judgement in favor of respondent and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period

is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 1, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

9